## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

AMY KORLAND,  CASE NO: 0:24cv61501

    Plaintiff,

vs.

TRANS UNION, LLC, EXPERIAN
INFORMATION SOLUTIONS, INC., and
EQUIFAX INFORMATION SERVICES, LLC.

    Defendants.
_____/

## PLAINTIFF'S COMPLAINT
## JURY DEMAND

1.   Plaintiff, AMY KORLAND ("Plaintiff" or "Ms. Korland") brings this action against TRANS UNION, LLC ("Trans Union"), EXPERIAN INFORMATION SOLUTIONS, LLC ("Experian") and EQUIFAX INFORMATION SERVICES, LLC ("Equifax") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (hereinafter "FCRA").

## JURISDICTION AND VENUE

2.   This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

3.   Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Broward County, Florida.

## PARTIES

4.   Plaintiff is a natural person who, at all times relevant to this action is and was a resident of Broward County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

5.   Defendant, Transunion LLC ("Trans Union") is a limited liability company incorporated under the laws of the State of Delaware, whose members are citizens of the state of Illinois. Trans Union is authorized to do business in and regularly conducts business in the State of

Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

6. Defendant, Experian Information Solutions, Inc. ("Experian") is an Ohio corporation incorporated under the laws of the State of Delaware. Experian is authorized to do business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

7. Defendant, Equifax Information Services, LLC ("Equifax") is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

8. Trans Union, Experian, and Equifax shall collectively be referred to as Credit Reporting Agencies ("the CRAs.")

**FACTUAL ALLEGATIONS**

9. Under the FCRA, the term "consumer report" generally refers to:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:
>
> i.  credit or insurance to be used primarily for personal, family, or household purposes;
>
> ii. employment purposes; or
>
> iii. any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).

10. The terms "consumer report", "credit report", and "consumer credit report" are used synonymously herein.

11. The FCRA requires CRAs to implement an automated reinvestigation system through which furnishers of information to the CRA may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file. 15 U.S.C. § 1681i(a)(5)(D).

12. To comply with the automated dispute reinvestigation requirements of the FCRA, Trans Union, Equifax, and Experian (the three major "National CRAs"), along with Innovis Data Solutions, Inc., developed and implemented a browser- based software system that allows the CRAs to electronically notify furnishers quickly and easily of disputed credit reporting information, and for furnishers to quickly and easily respond to such disputes following the furnisher's investigation of the disputed information.

13. The system is commonly referred to as e-OSCAR (Online Solution for Complete and Accurate Reporting) and was designed to be Metro 2 compliant. See http://www.e-oscar.org/ (last accessed August 14, 2024).

14. The e-OSCAR system primarily supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Data Form ("AUD") processing, as well as other consumer- dispute-related processes. *Id.*

15. The National CRAs, provide notice of a consumer's dispute to data furnishers in the ACDV format, and forward the ACDV to the furnisher through e- OSCAR.

16. If a furnisher's investigation of a consumer's dispute determines that the information in dispute is incomplete or inaccurate, the FCRA requires the furnisher to correct the information not only with the CRA that sent the ACDV, but with all other CRAs to whom the furnisher reported that information. 15 U.S.C. § 1681s-2(b)(1)(D).

17. The e-OSCAR system facilitates the furnisher's compliance with 15 U.S.C. § 1681s-2(b)(1)(D) by sending a "Carbon Copy" of an ACDV response "to each CRA with whom the [furnisher] has a reporting relationship" in addition to the response to the initiating CRA. See https://www.e-oscar.org/getting-started (last accessed August 14, 2024).

18. Additionally, a furnisher can manually correct a tradeline with a CRA other than the one that initiated a dispute by sending an AUD within e-OSCAR.

19. Trans Union, Experian, and Equifax each require data furnishers that report to them respectively to register with and use e-OSCAR, and states that e-OSCAR is "in compliance with FCRA and Metro 2 standards." See, https://www.transunion.com/data-reporting/support-teams (last accessed August 14, 2024).

20. Between the months of November 2021 to about March 2022, Ms. Korland began noticing unauthorized charges on her monthly statements from Barclays for an Old Navy Store Account (the "Account"), so she contacted Barclays promptly to dispute the charges.

21. The charges were from two merchants: Apple.com and Amazon.com (the "Merchants.")

22. Ms. Korland continued to dispute the charges directly with Barclays who repeatedly denied her claims of unauthorized use, which lead her to contact the Merchants directly.

23. Ms. Korland contacted Apple who informed her the charges would be removed, but they were not.

24. Ms. Korland also contacted Amazon.com regarding the unauthorized charges on her Barclays statements, but was unable to get the charges refunded. A redacted copy of the emails between Plaintiff and Amazon.com are attached as part of Composite Exhibit "A."

25. The disputed charges regarding Amazon.com were tied to an account being opened that Plaintiff never knew about or authorized. According to the email communications,

Amazon.com could not share information related to the fraudulent account because Plaintiff could not authenticate. *See* Id.

26. On July 12, 2022 Ms. Korland contacted the Plantation Police Department to address the Amazon.com account being opened. A redacted copy of the police report is attached as Exhibit "B."

27. The total amount of unauthorized charges between Apple.com and Amazon.com is $429.25.

28. Ms. Korland tried to have the information corrected by sending a written dispute to the CRAs on or about June 17, 2024 (hereinafter "Initial Written Disputes"). A true and correct copy of the Initial Written Disputes to the CRAs are attached hereto as part of Composite Exhibit "A."

29. The Initial Written Disputes attached Ms. Korland's communications with Amazon.com and the unauthorized charges she continuously disputed were highlighted. *See* Id.

30. Based on an updated consumer reports from the CRAs, all Defendants continued to report the inflated balance after receiving the Initial Dispute.

31. According to Plaintiff's Trans Union disclosure dated August 1, 2024, Plaintiff disputed the Account either electronically or by phone in: October 2022; January 2023; April 2023; July 2023; October 2023; January 2024; April 2024; and July 2024.

32. Ms. Korland's Experian disclosure dated August 1, 2024 which stated in the "Reinvestigation Info" section "[t]his item remained unchanged from the processing of your dispute in May 2024." Therefore, it appears an ACDV was sent from Experian to Barclays for the Initial Dispute and for a prior dispute in May 2024.

33. Additionally, the "Soft Inquiries" section in Ms. Korland's August 1, 2024 Experian disclosure lists Experian reviewing Ms. Korland's credit file during the same months she was

electronically disputing the Account with Trans Union. Based on information and belief, Plaintiff was also disputing the Account with Experian.

34. On June 26, 2024 Equifax responded to the Plaintiff's Initial Written Disputes by stating the Account was no longer reporting on Plaintiff's credit file, however Plaintiff's Equifax disclosure dated August 1, 2024 shows the account still reporting.

35. Additionally, Plaintiff's August 1, 2024 Equifax disclosure shows she disputed the Equifax reporting every month from October 2022 through April 2024 before her Initial Written Disputes. The disputes are noted in the 'Comments 2' section of the credit report with comment reading "Consumer disputes after resolution."

36. The CRAs reliance on BARCLAYS has caused the inflated balance on the Account ("Inaccurate Information") to be sent to remain on Plaintiff's credit reports when evaluating Plaintiff's credit worthiness.

37. The dates when the Inaccurate Information was viewed are reflected as "Regular Inquiries" or "Hard Inquiries" on Plaintiff's consumer disclosures following the electronic disputes and the Initial Written Disputes.

38. One or more of the enumerated "Regular Inquiries" and/or "Hard Inquiries" have resulted in damages to Plaintiff in multiple forms, including economic and non-economic harm.

39. Unless and until the Inaccurate Information is no longer a factor in Plaintiff being denied credit, being granted credit at increased rates, losing the opportunity to benefit from credit, or Plaintiff being forced to procure a co-signer to be granted any credit under any terms, these economic losses will continue.

## COUNT I - VIOLATIONS OF 15 U.S.C. §1681i
## (AGAINST TRANS UNION)

40. Plaintiff incorporates by reference the allegations in Paragraphs 1 -5, 8 – 29, 32 – 36, and 39 – 42.

41. At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

42. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

43. Trans Union received Plaintiff's electronic and/or telephonic disputes between October 2022 and July 2024 regarding the accuracy or completeness of the BARCLAYS account appearing on Plaintiff's consumer disclosure.

44. During the relevant time frame, Trans Union received Plaintiff's Initial Written Dispute regarding the accuracy or completeness of the BARCLAYS account appearing on Plaintiff's consumer disclosure.

45. Trans Union violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein, whether they were electronic, telephonic, or in writing.

46. Additionally, Trans Union unreasonably relied on information provided by BARCLAYS, when readily verifiable information that Plaintiff provided in the Initial Written Dispute placed Trans Union on notice that BARCLAYS's information was inaccurate and unreliable.

47. Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

48. Alternatively, Trans Union negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

49. As a result of Trans Union's FCRA violations, Plaintiff suffered mental and emotional distress associated with the Inaccurate Information being sent to third parties, damage to her reputation for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, mental and emotional distress of being denied credit or being granted credit at increased rates, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT II - VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST TRANS UNION

50. Plaintiff incorporates by reference the allegations in Paragraphs 1 – 5, 8 – 29, 32 – 36, and 39 – 42 as if fully set forth herein.

51. At all times relevant hereto, TransUnion is and was a "consumer reporting agency" as provided for under the FCRA.

52. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

53. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

54. Any users of credit reports that viewed the BARCLAYS account saw the Inaccurate Information.

55. Even after Plaintiff's collective disputes in multiple formats, the BARCLAYS

Account is still being reported with the Inaccurate Information.

56. Trans Union's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

57. In the alternative, Trans Union negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

58. As a result of Trans Union's failures to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, damage to her reputation for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, mental and emotional distress of being denied credit or being granted credit at increased rates, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT III – VIOLATIONS OF 15 U.S.C. §1681i
### AGAINST EXPERIAN

59. Plaintiff incorporates by reference the allegations in paragraphs 1 – 4, 6, 8 – 28, 30, 32 – 35, 37, and 39 – 42.

60. At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

61. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

62. Experian received Plaintiff's electronic and/or telephonic disputes between October 2022 and July 2024 regarding the accuracy or completeness of the BARCLAYS account appearing on Plaintiff's consumer disclosure.

63. During the relevant time frame, Experian received Plaintiff's Initial Written Dispute and regarding the accuracy of the account reported by BARCLAYS on Plaintiff's credit report.

64. Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein whether they were electronic, telephonic, or in writing.

65. Additionally, Experian unreasonably relied on information provided by BARCLAYS, when readily verifiable information that Plaintiff provided in her Initial Written Disputes placed Experian on notice that BARCLAYS' information was inaccurate.

66. Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

67. In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

68. As a result of Experian's violations of the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, credit denials, the loss of credit, loss of the ability to purchase and benefit from credit, mental and pain and anguish, damage to her reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Experian for: actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

## COUNT IV– VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST EXPERIAN

69. Plaintiff incorporates by reference the allegations in paragraphs 1 – 4, 6, 8 – 28, 30, 32 – 35, 37, and 39 – 42.

70. At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

71. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

72. During the relevant time frame, Experian received Plaintiff's Initial Dispute and follow-up correspondence regarding the accuracy of the account reported by BARCLAYS and/or Home Credit on Plaintiff's credit report.

73. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

74. Any users of credit reports that viewed the BARCLAYS account saw the Inaccurate Information.

75. Even after Plaintiff's collective disputes in multiple formats, the BARCLAYS account is still being reported with the Inaccurate Information.

76. Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

77. In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

78. As a result of Experian's failures to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, credit denials, the

loss of credit, loss of the ability to purchase and benefit from credit, mental and pain and anguish, damage to her reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT V – VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST EQUIFAX

79. Plaintiff incorporates by reference the allegations in paragraphs 1 – 4, 6, 8 – 28, 30, 32 – 35, 37, and 39 – 42 as if fully set forth herein.

80. At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

81. At all times relevant hereto, Plaintiff is and was a "consumer" as provided for under the FCRA.

82. Equifax received Plaintiff's electronic and/or telephonic disputes between October 2022 and July 2024 regarding the accuracy or completeness of the BARCLAYS account appearing on Plaintiff's consumer disclosure.

83. During the relevant time frame, Equifax received Plaintiff's Initial Written Dispute regarding the accuracy of the account reported by BARCLAYS on Plaintiff's credit report.

84. Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

85. Additionally, Equifax unreasonably relied on information provided by

BARCLAYS, when readily verifiable information that Plaintiff provided in her Initial Written Disputes placed Equifax on notice that BARCLAYS' information was inaccurate.

86. Even after Plaintiff's collective disputes in multiple formats the BARCLAYS account is still being reported with the Inaccurate Information.

87. Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

88. In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

89. As a result of Equifax's violations of the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, credit denials, the loss of credit, loss of the ability to purchase and benefit from credit, mental and pain and anguish, damage to her reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Equifax for: actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

## COUNT VI – VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST EQUIFAX

90. Plaintiff incorporates by reference her allegations in paragraphs 1 – 4, 6, 8 – 28, 30, 32 – 35, 37, and 39 – 42.

91. At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

92. At all times relevant hereto, Plaintiff is and was a "consumer" as provided for under the FCRA.

93. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

94. Any users of credit reports that viewed the BARCLAYS account saw the Inaccurate Information.

95. Even after Plaintiff's collective disputes in multiple formats, the BARCLAYS account is still being reported with the Inaccurate Information.

96. Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

97. In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

98. As a result of Equifax's failures to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, credit denials, the loss of credit, loss of the ability to purchase and benefit from credit, mental and pain and anguish, damage to her reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Equifax in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and such other and further relief including as the Court deems equitable and just under the circumstances.

## JURY DEMAND

99. Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**DEBT SHIELD LAW**
*/s/ Kevin Rajabalee, Esq.*
Fla. Bar. No. 119948
3440 Hollywood Blvd., Suite 415
Hollywood, FL 33021
Main: 754-800-5299
Direct: 954-667-3096
Fax: 305-503-9457
kevin@debtshieldlaw,com
dayami@debtshieldlaw.com
service@debtshieldlaw.com
*Attorney for Plaintiff*